Yes, your honor. Good morning, your honor. Victor Sherman for the appellant. This is a case similar to the Bivens case. This is a claim of a Fourth Amendment violation by my client based upon the fact that he was arrested in Thailand based upon false information by an FBI agent. The agent had neither probable cause and in fact manufactured evidence to have my client arrested in Thailand. This is very similar to the Hobbs case in which he was seized in his own home in front of his wife. And in my case, Mr. Hobbs was seized in his own home in front of his wife and child based on false allegations provided by an agent. So the question in this case is, since the facts are extremely similar to the Bivens case, should this case be considered a new context for the Bivens case? And in that we have to look at the United States Supreme Court case in Ziegler v. Abbasi in which the court set forth various factors to determine whether or not this was in a new context. And in Abbasi, the court basically set out four or five different considerations to determine whether or not this was taken out of the context of Bivens. One of them, and I'm going to just briefly, the rank of the officer, the constitutional right involved, the type of action, the extent of judicial guidance, and the legal mandate under which the officer was operating. In this particular case, there was nothing to indicate that the rank of the officer was anything other than a normal FBI agent. He had no special discretion or policymaking authority. This was a Fourth Amendment violation just as in Bivens. Well, sir, can I interrupt you for a moment before you run into the Abbasi factors? Since a critical issue here is that the arresting officers were Thai, that he was arrested in Thailand by Thai law enforcement. And I don't know of, and perhaps you could enlighten me, can you cite any case, a Bivens case, a criminal case, in which our courts have held it's a Fourth Amendment violation, there's a Fourth Amendment violation based on arrest by foreign actors in a foreign country. And you compare it to Hobbs, but in that case, the plaintiff was arrested in his home in the United States by American law enforcement. So that, in my view, is a pretty significant distinction. So do you have a case that demonstrates that there is even a Fourth Amendment violation available when the conduct complained of was by foreign actors? Okay. First of all, Your Honor, I think the court has to look at 18 U.S.C. 2423, because this is the section that was in 1994, in which Congress passed that particular section, which talks about engaging in illegal sexual activity in a foreign country. Now, this is the section under which Mr. Devine was operating. In other words, in the normal case, what happens in a foreign country, the American courts don't have any jurisdiction. This is a specific statute in which Congress gave the United States court's jurisdiction to prosecute people that commit sex crimes in a foreign country, so they can be extradited and tried in the United States court. So this is a very specific statute. And as the court asked me, this is a very unusual situation, because normally we don't have statutes that give the FBI this kind of authority to arrest and prosecute people in the United States. Okay, I understand your point, but you haven't answered my question. Okay, there is no case. Yes, this is, we don't have a specific factual case similar to our particular case, and I assume... And my question is a little broader than that. It was any case, Vivian's criminal, that finds a Fourth Amendment violation based on an arrest in a foreign country by foreign law enforcement. I don't know of one. If you know of one, that would be helpful. I don't know of any one particular one, but the case in Mitchell versus Higginbotham talked about this particular, very particular issue in which the court said that whether or not Vivian's lies against federal law enforcement in conducting non-terrorism criminal investigations against Americans in a foreign country, whether or not that should be a Vivian's violation. And they said at that time, they didn't have to decide that, but it was an open question. But no, do I have a specific case that allows this type of Vivian's action? The answer is no. This is a case, I think, of first impression. And you don't, you don't allege that the defendant, Devine, that he actually affected the arrest. Oh, I absolutely do. He wasn't physically present necessarily, although he interrogated my client the day that he was arrested. I understand that. And then you want to amend as well. And in your request to amend, you state that you would try to disassociate from any foreign legal issues by alleging that Mr. Devine had no control over the foreign agents. Is that correct? So he's, if that's true, then he's not affecting the arrest and didn't have control over the Thai agents' decision to arrest that client. Excuse me. He absolutely, the Thai authorities did not do at the time of the arrest, any of an independent investigation. They got the information for Mr. Devine and based upon what he told them in his investigation, they just were carrying out his order because Mr. Devine had no legal authority in Thailand to impose the arrest himself. He had to use the Thai authorities. Let me give an analogy. Let's assume that the FBI would go to a state authorities, state police in the state of California and say, listen, I want you to arrest somebody in the state of California based upon the information that I am providing you. And then the state authorities take the word of the FBI agent and arrest somebody in the state of California. Mr. Devine couldn't then say, well, I'm not the one that arrested the individual in the state of California, even though the state officers saying everything we did was based upon what the federal FBI agent told me to do. We did not do anything independently at that time. One could not say that Devine's not responsible for the arrest of the defendant. And under normal court law, he would be 100 percent responsible for what the state authorities do. Now, the fact that this happened in Thailand shouldn't change the issue specifically because we have a statute from Congress. It seems that, and forgive me if I'm misunderstanding your argument, but it seems that there's some contradiction within the arguments you're making when you argue that there's no implication of foreign law. You know, the issues that came up in Hernandez where the Supreme Court recently said we're not extending Bivens to foreign conduct or anything that can implicate foreign laws or relations with other nations. And I understand your argument to be that that's not going to happen here because these Thai law enforcement agents were not at all under Mr. Devine's control. There's no implication of Thai law. But now you're arguing they did everything at his behest. So I'm confused by that. Maybe, okay, maybe the brief was we're not saying that we're saying Thai law has nothing to do with this case. I am saying that the Thai authorities were doing everything they did specifically based on what Devine instructed them and gave them the information. So my argument is not that Thai law was in any way violated. And I'm not saying that the Thai authorities should somehow be responsible. I'm saying the Thai authorities did everything based upon what Mr. Devine told them to do. And he gave them false information and prevented them from finding the truth. So Thai has nothing to do. Aren't there some implications for foreign relations and Thailand that the suggestion in the allegation is that these agents are under the control of the United States agents. They're puppets. Essentially, they're just acting at our behest and they're puppets. And I think Thailand might have a problem with that, which brings us back to Hernandez and why the courts aren't supposed to create new applications of Bivens, particularly when there are extraterritorial concerns. Okay, first of all, in Hernandez, in the discussion between the government and the Supreme Court justices, they said that if Hernandez had been an American citizen, it would have been a different result. The reason they came to the decision in Hernandez, one of the main reasons that there was possibly a conflict between American policy and Mexican policy was because the person shot in Hernandez was a Mexican citizen and naturally Mexico would have an interest in protecting their own citizen. In our case, we have an American citizen. So Thailand has no interest whatsoever in what happens to Mr. Divine. And we're not in any way saying that the Thai authorities or Thai law have anything to do with this case at all. And there's no conflict between American law and Thailand law or between the American authorities and the Thai authorities. We're saying this whole case focuses 100% on what Divine did and has nothing to do with the Thai authorities. So we're not saying there should be conflict between policy between America and Thailand. We're not claiming that at all. We're only looking at what Divine did. So if we take it out of the extraterritorial context and the effect on foreign nations and relations with foreign nations, and just look at the allegations, you're alleging a Fourth Amendment violation, yet Divine didn't arrest this person or seize him, he wasn't even there. And you can't tell me a Bivens case or a criminal case where that's been found to be a Fourth Amendment violation. And then your other claim, I believe was for malicious prosecution, also not a claim that I am aware of has been recognized in the Bivens context. So why are these claims not just in a new context, leaving aside what involvement the Thai authorities had? Well, are you saying that an FBI agent, again, I give you my example, would have all happened in the United States? But it didn't. And that's the key thing here. You're bringing back examples that might be on point, because the question is, can you have a Fourth Amendment violation for an arrest made by foreign actors? And I think your misled by an American agent. I mean, you want that extension, but there's no law to support. Well, I don't have a specific case in which an FBI agent in a foreign country asked foreign agents to arrest somebody. Yes, there's no specific law on point. But clearly under tort concepts, if Mr. Divine goes to a local police agency, and I think you have to separate first of all, is this a Bivens context case, and then you have to separate that from the idea of it's territorially in another country. So if we just look at Bivens itself, if in Bivens, the agents who arrested Mr. Bivens was not physically present at the time that Bivens was arrested, but the arrest was and but he was outside, let's say, or at his office, and he had told local agents go in and arrest Mr. Bivens, would somehow the FBI agent, the federal agents in Bivens had been protected because they were not physically present at the time Mr. Bivens was arrested, even though everything the arresting agents did was based upon what the FBI told him to do. I don't see how that possibly makes any distinction. The distinction Your Honor is making, I think you're putting the two things together and saying, well, this is a new Bivens case, because the FBI agent isn't the one that actually made the arrest. And then you're jumping to this point. Well, it happened in a foreign country. So that makes it even worse. I think we have to divide. I mean, I'm actually I'm not, but that's okay. It's not really I'm not making the argument. I mean, the first question under a bossy is, is this a new context? We can agree to that we have to decide. Yes, I totally agree. Well, we have next step that doesn't that's not fatal. If it is a new context, then we have to decide are there factors of caution against allowing this claim? And, and in that instance, that's where I think Hernandez comes into play. And that's where to me, the extraterritorial applications come in. But they also apply and whether it's a new context, because there's, there's no Supreme Court case. And that's where I think we have to look that says there's a Bivens violation, the Fourth Amendment violation based on foreign conduct. So then we'd have to decide if there's something that cautions against recognizing that claim, unless I'm just wrong. And it's not a new context at all. And you can have a Fifth Amendment violation. I don't think it is a new context. Because, again, the only distinction between Bivens in this case is the FBI agent who was responsible for the arrest had other had surrogates do it for him. Why should that make any possible difference? Whether he is the person to do it, does it or the surrogate does? Well, I mean, are there cases like that? You know, you you posited the hypotheticals, which I appreciate. But are there cases like that in the United States where an agent didn't affect the arrest? And say didn't sign the the affidavit statement of probable cause? And was just there? You're just outside your own site? Is that a Fourth Amendment violation? Well, I think it makes fundamental sense that that would be a Fourth Amendment violation, whether the agent, if he was outside, and he told the local authorities, in this case, the Thai authorities, go ahead and make the arrest. I don't see how that makes them. That the fact that I don't have any authority, I think a bossy talks about the factors to determine whether you're taking out of the new context. And in our reply brief at pages eight, not nine, we go through the various factors. And none of them would indicate that this is a new context case at all. The only thing that this case makes this case unusual is it happened in Thailand. If this fact would have happened in the United States, the FBI can't hide behind the fact that we told somebody else to do it, and they acted as a surrogate. So the only issue is the fact, in my opinion, that it happened in Thailand. And the thing that I think saves the case for Mr. Hobbs is the fact that he was basically operated under a statute enacted by Congress. And this was 25 years after Vivens was decided. And Congress had specifically given the United States jurisdiction to prosecute these exact type of cases in the United States. And clearly, if this case had been prosecuted in the United States based upon false evidence presented by Mr. Devine, why wouldn't the client then have a Vivens claim? What difference would it have made the fact that it happened in Thailand or the United States? If this case would have been brought to the United States, and he would just been indicted in the United States, but not actually tried. And during the pretrial phase, Hobbs would have found out that everything that And they had to dismiss the case in the United States. Wouldn't Hobbs then been able to bring a Vivens case against Mr. Devine? With that, Mr. Sherman, we'll switch and hear from Mr. Beck. May it please the court. I'm Assistant U.S. Attorney Daniel Beck, appearing on behalf of the L.E. and defendant, Agent Randall Devine. This case involves a very novel attempt to extend Vivens' liability to an alleged malicious prosecution and false arrest that took place in Thailand by the Thai government. And in this, his fourth lawsuit, the plaintiff is seeking to blame under the Vivens doctrine, my client, Agent Devine, for what allegedly happened in Thailand. The district court correctly found that this was an unprecedented context, and that pursuant to the Supreme Court's guidance in Abbasi and the similar issues that were raised in the Michelle decision that the D.C. Circuit addressed, that it had to be dismissed. In addition to some of the differences, by the way, that have been discussed already between this case and Vivens, another relevant issue I would point out is that there's no allegation that this was a warrantless arrest. In fact, as I believe was the case in Vivens, and in fact, the appellant's opening brief and reply brief concedes that there was a Thai judicial warrant pursuant to which he was charged. Following the decision of Hernandez v. Mesa, where the Supreme Court determined that Vivens' liability could not be extended to a cross-border shooting context, the reasons compelling dismissal of this case have been dispositively stringent. Most critical, I think, is that the Supreme Court correctly and very clearly articulated the issue of separation of powers, not of whether it is a good claim or a bad claim, not of whether it has positives or negatives, but rather who should decide whether liability should extend to this unprecedented context. Should it be Congress or should it be the courts? And in this context, as in Michelle, as in Hernandez, the answer is Congress. Congress should decide if it's it has not chosen to extend liability to these issues. Now, I think one of the most critical things the Supreme Court did in Hernandez v. Mesa is it gave a very detailed and sophisticated analysis of how Congress has acted in related matters, matters involving tort liability for acts that federal agents may commit abroad. In a bar on extraterritorial liability was not relevant, but the Supreme Court analyzed the issue much more broadly as what are the types of actions Congress has taken in these areas, and does that counsel hesitation about stepping in front of Congress and judicially extend the damages liability into this new context? Critical were both how Congress had handled the FDCA and the Westfall Acts, also Torture Victims Protection Act. In both contexts, it had ratcheted back barred liability abroad for U.S. acts by U.S. officials. But also in the limited narrow context where Congress had extended liability, it had done so by empowering the executive branch to essentially solve claims in a way that's tightly integrated with foreign policy concerns, which were driving the issues. So Congress has acted in these areas and the way it's acted, there's no resemblance to authorizing a tort damages claim in district court decided by a jury trial against an individual federal officer. So this counsels, I would say, extreme hesitation in any extraterritorial context as to whether it would be appropriate. I don't know that it forecloses any conceivable kind of extraterritorial liability forever, but as a practical matter, it's very difficult to see how it could ever be appropriate to extend business liability to the context of torts allegedly committed abroad by federal agents, particularly given the guidance in Hernandez v. Mesa. Now, there's the argument that this didn't take place under foreign law, but of course, the causation, all the actors who actually arrested and prosecuted them, which ordinarily would be the heart of a malicious prosecution case, if it were litigated in the United States, all took place under foreign law. It was all governed by foreign law. What the judicial officer who issued the warrant allegedly did and why, what the police allegedly did and why, what the prosecutors allegedly did and why. And in the only context in which I'm aware of, in which there has been any extension of the Fourth Amendment as cited in our papers to extraterritorial issues, this court gave direction that foreign law had to be considered at the outset of that analysis in the context of evidentiary exclusion analysis. And it provided very detailed analysis of foreign law in that context, which is the exact issue that Congress found rendered inappropriate to create extraterritorial liability against the United States under the FTCA. And that's because if you're talking about a joint venture that happened abroad and was dominated by American agents, then the question of what it was doing to control these people is going to be critical. There's a suggestion that maybe the Thai authorities didn't do any independent investigation and just simply acceded to whatever the FBI agents told them. Well, that would be a terrible basis for extending Bivens liability. If it really was foreign government just got some information and didn't care and just simply mechanically went after somebody without the kinds of protections that would be applicable in American case, because you're essentially computing the deficiencies of the foreign legal system and the foreign actors to a federal agent. And you're putting them at risk of severe personal liability depending upon what foreign agents allegedly do wrong. They have little control over that. And from a foreign policy perspective, if you are putting the interactions between American law enforcement and foreign law enforcement under a new regime in which the American agents are subject to Bivens liability, if something goes wrong in the consequences for how American law enforcement operates abroad consistent with American foreign policy, I don't see how you can avoid that. I think the plaintiff's position is that would be a good thing and that it would be great to regulate things that way. I think it would be a terrible thing, but more to the point, it's an issue that should be decided by Congress in the future. In terms of, I think it's clear this case is a new context, so I'm not going to belabor that. In terms of why is extraterritorial conduct significant, the first issue is as a special factor. And as the Fifth Circuit found in Hernandez, that it was a separate factor, that special factor that by itself counseled hesitation in extending Bivens liability. First is how Congress has acted in this area in terms of its expressed desire for how it should be regulated. Second is the fact that, and this really comes up in the FTCA context, but also in the context of, for example, securities law where there have been attempts to get around the extraterritorial, the presumption against extraterritoriality by arguing that all the wrongful conduct was within the United States. There's allegations that Agent Devine repeatedly went to Thailand to investigate, to speak with witnesses, to meet with the Thai government authorities, to interrogate the plaintiff. It's clearly radically extraterritorial from any angle. It's also impossible to get away from, I think, the fact that this was part of a broader process of FBI operations in a foreign country that are governed by a pretty complex series of things like executive orders, treaties, statutes, regulations, interagency agreements that specify when and how FBI agents might operate in a foreign country. And so, to grow Bivens' liability into that mix plainly has the potential for severe disruption of the balance that to date has been struck by both by Congress and by the executive branch. So, Mr. Beck, if I may interrupt you. Mr. Sherman argues that this is not a new context, that it's a false arrest, malicious prosecution. These are valid, recognized claims. Your argument is focusing on the extraterritorial nature of the allegations and how that counsels caution extending liability in the Bivens context. But going back to whether it's a new Bivens context, you didn't say much, if anything, on that point other than to say it is a new context and move on. Is it a new context because of the extraterritorial implications or is there some other reason this is a new context for Bivens? I think there are three reasons and I apologize. I believe some of that had been covered earlier, so that's why I skipped over it. So, I would like to be clear then. It's a new context for the two reasons the district court found relative to Bivens and then the third I mentioned, which is the judicial warrants. The first is that it is extraterritorial and that clearly raises a host of additional concerns. The second reason is that Mr. Devine was not the arresting agent. He was not like the FBI agents who burst into the home without a warrant in Bivens. He allegedly manipulated and controlled foreign law enforcement authorities who did the actual arrest. That's a very significant difference that the district court found. And then the third reason, again, it was not a warrantless arrest anyways. So, it's really very different than Bivens. There also is the issue, I think, that it involves novel and in some ways very interesting, but that's the problem, very novel and esoteric issues about the application of the Constitution abroad and of the Fourth Amendment abroad that have not been ever decided, much less decided as the basis for Bivens liability. So, I think that's another difference that is between this case and between the two. Anything else? Your Honor, I would like to make a couple points and I'll try to be brief on that. Sure. On the diplomacy front, if it's alleged that plaintiff is alleging is true, it clearly creates terrible diplomatic problems. If it's alleged that the FBI has been subverting and controlling and misusing the Thai judicial system from top to bottom for American foreign policy prosecuting Americans, that's a terrible problem. If it's alleged that, as it is, that a Thai anti-trafficking center is the pawn of federal law enforcement and federally funded and controlled that way, that's terrible. And if it's alleged that the FBI, as it is, is directing the most horrible of allegations, street children, to have sex in Thailand, that is a diplomatic problem. That counsels hesitation, putting that at the forefront of a jury trial in Los Angeles and the legal proceedings leading up to it. The last issue I think I might briefly touch upon is this idea of, and then I'd like to reserve time if possible, is this idea of amendment that the complaint might be amended. As an initial matter, this is the fourth lawsuit and it also follows two FTCA claims and FOIA claims. It's not the beginning of a litigation. It's a very protracted final theory of litigation. The district court, its review for abuse of discretion decided that it was not appropriate to grant leave because these claims are included as a matter of law. And that's consistent, I think, with how they've been handled by the appellate courts. They've been treating it as a threshold issue. In fact, in Hernandez, it was decided that this issue needed to be reached first before the constitutional issues and it was remanded because of that. So it is appropriate to decide as a matter of law. It's a fairly searching level of analysis that you see in the opinions that have addressed this from the appellate courts and the Supreme Courts. And there are no additional factual allegations that has been identified in any of the papers below or in the appeal papers as to how this can somehow be saved by additional factual allegations. In fact, the reply brief, I believe, covers the issue in sort of a footnote and barely mentions it. And that's because there's not really anything more that could be said. If there's an... the case's premise on the idea that my client caused this foreign arrest and prosecution, and there's no getting away from that. That's the causation theory and it automatically raises all of these severe evidence issues that were correctly related. That to date, courts have universally found to warrant dismissal of these types of claims. And with that, I'd like to reserve my remaining time. Well, I think that completes your time, but that's okay. We will... Mr. Sherman, I think you have about a minute and a half for rebuttal. Mr. Sherman, your microphone. Okay. Bivens was decided in 1971. 18 U.S.C. 2423 was amended in 1994 to provide international jurisdiction over United States citizens and permanent residents who engage in sexual crimes overseas. By that time, Bivens had been in existence for a quarter of a century. It must be assumed that Congress was aware of Bivens liability and would have expressly limited such causes of action extraterritorially had it intended to do so. So when they enacted 2423 that gave American courts jurisdiction to prosecute defendants in the United States, they must have been aware that Bivens would allow civil cases if those prosecutions were illegally initiated overseas. I don't think there's any other way to look at it. But what you're suggesting is that we imply that from silence, from congressional silence, we conclude that that statute was intended to extend Bivens. Well, the government is saying that unless Congress, you know, did something differently, you can assume that they did not want any tort liability. We have to assume that. Well, that's not exactly what the government's saying. The government's saying unless Congress explicitly created liability, created civil liability, then they haven't done it. They haven't acted. And I think you're saying the flip side, which is because they passed a criminal statute that we implied from the silence of any civil remedy in that statute that there is in fact a civil remedy. I am saying that we have to believe that Congress certainly was aware of Bivens. I don't think there's any way around that. And they certainly could have said, hey, we're not going to give Bivens responsibility if, in fact, the FBI overseas does something illegally. And we assume that in knowledge of Bivens, they would have assumed that that was a remedy if, in fact, activity by an FBI agent form was illegal. Let me just end with this thought. If we accept the government's theory in this case, then we're saying an FBI agent can target anybody they want anywhere in the world, give false information, have that person arrested under 2423 for sexual conduct overseas. And there's nothing, no remedy that person has. And the FBI is free to create false information and prosecute anybody they want for no reason at all. That can't possibly be the law. And that's bad with Thai law. All we're saying is let's concentrate on divine activity. And if we can prove that he intentionally created false information, then the responsibility is divine and not Thai authorities. And there's no conflict between the United States and Thailand. Okay. Thank you, Mr. Sherman. We appreciate your arguments this morning. The matter is submitted at this time. And we'll take a short, very few minute recess while we tee up the next case, which is Shah versus Galco Insurance.
judges: Paez, Zouhary, Bade